UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANNETTE L. WILDE,

          Plaintiff,                    Case No. 5:19-cv-11401
                                         District Judge Judith E. Levy
v.                                      Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

          Defendant.

_____/

## REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 17), GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 19) and AFFIRM THE COMMISSIONER'S DECISION

**I.**    **RECOMMENDATION**:  For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (ECF No. 17), **GRANT** Defendant's motion for summary judgment

(ECF No. 19), and **AFFIRM** the Commissioner's decision.

**II.**    **REPORT**

       Plaintiff, Annette L. Wilde, brings this action under 42 U.S.C. §§ 405(g)

and/or 1383(c)(3) for review of a final decision of the Commissioner of Social

Security ("Commissioner") denying her application for disability insurance (DI)

benefits.  This matter is before the United States Magistrate Judge for a Report and

Recommendation on Plaintiff's motion for summary judgment (ECF No. 17), the

Commissioner's cross-motion for summary judgment (ECF No. 19), Plaintiff's

reply (ECF No. 21), and the administrative record (ECF No. 12).

### A.   Background and Administrative History

Plaintiff filed her application in May 2016, alleging that her disability began

on July 24, 2015, at the age of 55.  (R. at 132.)  In her disability report, she lists

several conditions (*e.g.*, degenerative disc / joint disease, spondylosis, arthritis in

various areas, panic attacks, anxiety, depression, overactive bladder, and irritable

bowel syndrome (IBS)) as limiting her ability to work.  (R. at 161.)  Her

application was denied on October 3, 2016.  (R. at 51-73.)

Plaintiff requested a hearing by an Administrative Law Judge ("ALJ").  (R.

at 75-76.)  On May 3, 2018, ALJ Martha M. Gasparovich held a hearing, at which

Plaintiff and a vocational expert (VE), Luann Castellana, testified.  (R. at 30-50;

*see also* R. at 234.)  On June 4, 2018, ALJ Gasparovich issued an opinion, which

determined that Plaintiff was not disabled within the meaning of the Social

Security Act.  (R. at 14-29.)

Plaintiff submitted a request for review of the hearing decision.  (R. at 125-

131.)  However, on February 11, 2019, the Appeals Council denied Plaintiff's

request for review.  (R. at 1-6.)  Thus, ALJ Gasparovich's decision became the

Commissioner's final decision.

It seems that, on April 10, 2019, Plaintiff submitted a request for an extension of time to file in federal court, although it is not clear whether the AC granted this request.  (R. at 7.)  Nonetheless, Plaintiff commenced the instant action on May 10, 2019.

### B.    Plaintiff's Medical History

The administrative record contains approximately 469 pages of medical records, which were available to the ALJ at the time of the June 4, 2018 decision. (R. at 29, 241-709 [Exhibits 1F-21F].)  These materials will be discussed in detail, as necessary, below.

### C.    The Administrative Decision

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity (SGA) since July 24, 2015, the alleged onset date (AOD).  (R. at 19.)  At **Step 2**, the ALJ found that Plaintiff had the following severe impairments:  bilateral hip osteoarthritis (status post right hip replacement), lumbar stenosis, lumbar spondylosis, left shoulder degenerative joint disease (DJD), cervical stenosis, hypertension, and right knee chondromalacia.  (*Id*. at 19-20.)  At **Step 3**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (*Id*. at 20.)  **Between Steps 3 and 4** of the sequential

process, the ALJ evaluated Plaintiff's residual functional capacity ("RFC")[1] and

determined that Plaintiff had the RFC:

> . . . to perform sedentary work as defined in 20 CFR 404.1567(h) except unable to stand/walk more than 2 hours in an 8-hour day; sitting would be unlimited, but would need a sit/stand option at least every hour; could lift no more than 10 pounds [*i.e., exertional limitations*]; could only stoop, squat, climb, balance, crouch, crawl, or kneel occasionally [*i.e., postural limitations*]; reaching in all directions limited to occasionally [*i.e., manipulative limitations*]; would need to avoid extremes of temperature, wetness, and humidity; and would need to avoid vibrations and hazards such as unprotected heights and open, moving machinery [*i.e., environmental limitations*].

(*Id*. at 21-23.)  At **Step 4**, the ALJ determined that Plaintiff was capable of

performing past relevant work as a department manager and welfare manager, as

such work did not require the performance of work-related activities precluded by

Plaintiff's RFC.  (*Id*. at 23-24.)  The ALJ therefore concluded that Plaintiff had not

been under a disability, as defined in the Social Security Act, from July 24, 2015,

through the date of the decision.  (*Id*. at 24.)

### D.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case

---

[1] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec*., 276 F.3d 235, 239 (6th Cir. 2002).

under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this

Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### E.    Analysis

Plaintiff's three statements of error take issue with the ALJ's treatment of the opinion evidence, Plaintiff's subjective statements, and her depression.  (ECF No. 17, PageID.781-794; *see also* ECF No. 21, PageID.830-836.)

### 1.    Whether the ALJ properly analyzed the opinions of Plaintiff's treating physicians?

Plaintiff's first statement of error concerns the ALJ's treatment of opinion evidence from her treating physicians.  The Social Security Administration will give controlling weight to a treating source's medical opinion if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record . . . ." 20 C.F.R. § 404.1527(c)(2).  The ALJ must provide "good reasons," 20 C.F.R. § 404.1527(c)(2), and the decision "must be sufficiently specific to make clear to any

subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight[,]" SSR 96-2P, 1996 WL 374188, *5 (S.S.A. July 2, 1996).[2]

### a. Treatment by Kristin L. McFadden, D.O.

The administrative transcript includes records of Dr. McFadden or her office, dated May 2014 through February 2018 (R. at 373-387, 450-580, 660-681), as well as multiple imaging test results.[3]  The ALJ cited some of these records when reviewing the evidence, after which she made various assignments of weight to the opinion evidence.  (R. at 22-23.)[4]

---

[2] The rescission of SSR 96-2p is "effective for claims filed on or after March 27, 2017."  *Rescission of Soc. Sec. Rulings 96-2p, 96-5p, & 06-3p*, SSR 96-2P, 2017 WL 3928305 & 2017 WL 3928298 (S.S.A. Mar. 27, 2017).↑ *See also SSA NOTICE OF RESCISSION OF SSRS 96-2P, 96-5P, AND 06-3P.*, Soc. Sec. Rep. P 15636C. Plaintiff's application was filed in May 2016.  (R. at 132-133.)

[3] Although some of the imaging test results pre-date the period relevant to this appeal  (*see* R. at 360-364), most do not.  During the relevant period (*i.e.*, the alleged AOD of July 24, 2015 to the June 4, 2018 decision date), Plaintiff underwent a knee MRI on September 11, 2015 (R. at 241-242, 249-250, 281-282, 355-356, 609), a September 30, 2015 transthoracic echocardiogram (R. at 367-368, 604-605), a March 14, 2016 spinal x-ray (*see* R. at 349-350, 369), a May 10, 2016 hip x-ray (R. at 297, 370), a lumbar spine MRI on July 12, 2016 (R. at 396-398, 695, 699-700), a May 18-19, 2017 cardiovascular test (R. at 619, 621-622), a June 30, 2017 hip x-ray (R. at 293, 633, 640-641), a cervical spine MR on February 23, 2018 (R. at 701), a cervical spine MR and a left shoulder x-ray on March 1, 2018 (R. at 698-699, 701, 703-706), and a right shoulder ultrasound and a left shoulder musculoskeletal ultrasound on March 7, 2018 (R. at 697-698, 706-708).

[4] The record contains two MSSs to which the ALJ did not expressly refer:  (a) the May 13, 2016 MSS of Dr. McFadden, who opined that Plaintiff was totally

### i.     Primary provider Dr. McFadden's Medical Source Statement (MSS)

Plaintiff claims that the ALJ erred in affording "some weight" to Dr. McFadden's November 2, 2017 MSS regarding physical health.  (R. at 655-658; ECF No. 17, PageID.781.)  Dr. McFadden's MSS lists diagnoses of chronic midline low back pain without sciatica, lumbosacral spondylosis without myelopathy, spinal stenosis of lumbar region without claudication, major depression (recurrent, severe), obstructive sleep apnea (OSA), and lumbar degenerative disc disease (DDD).  (R. at 655.)  Dr. McFadden explained why Plaintiff's pain – she is slow moving and requires frequent changes in positions, including lying down to relieve pain – and her fatigue – from OSA, depression, and medication side effects – would render her unable "to maintain a normal 8 hour work day[.]"  (R. at 656.)  She also opined that Plaintiff would likely miss three days per month "given her symptoms and limitations[,]" and would likely lie down two to three hours per day "to relieve her symptoms[.]"  (R. at 657.)  Additionally, Dr. McFadden explains that Plaintiff "has been under my general

_____

disabled from performing her previous occupation and from "working at any other occupation or type of employment . . . [,]" (R. at 371-372), although this opinion was considered by the state agency consultant (*see* R. at 62); and, (b) the August 12, 2016 consultative examination (CE) report of Wissam ElFallal, D.O., who concluded that Plaintiff had DDD and lumbar spondylosis with nondermatomal back pain (R. at 404-409).

medical care for around 15 years[,]" and "has a number of medical conditions that

make maintaining full time employment difficult for her."  (*Id*.)

When considering Dr. McFadden's November 2, 2017 MSS (R. at 655-658),

the ALJ appears to have referred to Dr. McFadden's same-day treatment notes:

> She also indicated in her notes at Exhibit 18F [R. at 660-681] that she
> does not think the claimant can maintain full time employment.  The
> issue of disability is reserved to the Commissioner, but this is a
> treating source, so I give some weight to this statement.  The medical
> source statement is unsupported by treatment and undercut by low
> pain complaints and reports that she is doing well.  Exhibit 17F [R. at
> 655-658] is unsubstantiated overall but given some weight as it is
> from a treating source.  The claimant may experience some pain from
> her conditions, but the file does not demonstrate inability to perform
> sedentary work.  Further, the evidence does not show worsening such
> that she could not return to a sedentary job but for inter office
> conflicts.

(R. at 23; *see also* R. at 669.)

Plaintiff seems to question whether the ALJ offered "good reasons," 20

C.F.R. § 404.1527(c)(2), for the weight assigned to Dr. McFadden's "thoughtful

assessment based on her 15 years of treatment . . . [,]" by:  (a) challenging the

ALJ's characterization of treating psychiatrist Malini Shenava, M.D.'s MSS as

"suggesting she would be absent or off-task inconsistent with work activity[,]" (R.

at 21, 237, 583); and, (b) taking issue with the ALJ's treatment of Dr. McFadden's

November 2, 2017 MSS as to exertional limitations and same-day notes about full-

time employment (*see* R. at 23, 655-658, 669).  (ECF No. 17, PageID.784-785.)

As Plaintiff sees it, the ALJ did not consider "the lengthy treatment history in

reducing the weight [assigned] to Dr. McFadden's opinion."  (ECF No. 17, PageID.782-783.)  *See* 20 C.F.R. § 404.1527(c)(2) ("Treatment relationship.").

In fact, the ALJ described the documents at Exhibit 18F as "primary notes," "primary care notes," or "treatment notes," and the ALJ described Dr. McFadden as "the primary provider."  (R. at 22-23.)  Thus, even if the ALJ did not expressly cite the 15-year length of the treatment relationship, and even if the ALJ did not reference these records by date across the nearly 3-year relevant period (*i.e.*, the alleged AOD of July 24, 2015 to the June 4, 2018 decision date), it is clear that the ALJ considered the treatment relationship.  In fact, "[t]he ALJ need not perform an exhaustive, step-by-step analysis of each factor; she need only provide 'good reasons' for both her decision not to afford the physician's opinion controlling weight and for her ultimate weighing of the opinion."  *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 785 (6th Cir. 2017), *aff'd sub nom. Biestek v. Berryhill*, 139 S. Ct. 1148 (2019) (citation omitted).

Also, Plaintiff points to other records of which Dr. McFadden would have been aware, such as the July 2014 to September 2015 records from Robert A. Young, M.D. and David H. Janda, M.D. of Orthopedic Surgery Associates, P.D. (*see* R. at 251-262, 273-280, 357-359) and the March 14, 2016 spinal x-ray (*see* R. at 369, 349-350).  (ECF No. 17, PageID.783.)  However, even if Dr. McFadden "was well-versed in Wilde's overall treatment . . ." when completing the

November 2, 2017 MSS (R. at 655-658) (*id.*, PageID.783-784), the ALJ

permissibly discounted Dr. McFadden's November 2, 2017 MSS, not only by

explaining that it infringed on an issue reserved to the Commissioner, *see* 20

C.F.R. § 404.1527(d), but also because it was "unsupported by treatment and

undercut by low pain complaints and reports that she is doing well."  (R. at 23.)

Thus, the ALJ considered the supportability and/or consistency factors.  20 C.F.R.

§ 404.1527(c)(3),(4).

Plaintiff challenges the ALJ's characterization, specifically contending that

"there are no medical records that explicitly state that Wilde is 'doing well' or that

Wilde no longer requires treatment for her chronic conditions[,]" (ECF No. 17,

PageID.785).  However, nearly three months after the May 18, 2017 right total hip

replacement, Creg A. Carpenter, M.D. (who performed the surgery) noted that

Plaintiff was "ambulating without assistive devices[,]" denied pain, and had "no

complaints[,]" (R. at 691; *see also* R. at 628-629, 651).  Moreover, Dr.

McFadden's November 2, 2017 notes indicate that Plaintiff "has used Flexeril with

some relief[,]" (R. at 668).  And, on January 4, 2018, although Plaintiff presented

to a Certified Physician Assistant for an acute increase in her right low back pain,

she reported that her right hip pain resolved.  (R. at 693.)  On February 22, 2018,

Srikrishna Chandran, M.D. noted that Plaintiff's lower back pain was "doing

well[,]" and she described her shoulder pain as "2-3/10."  (R. at 695.)   The ALJ

expressly cited each of these four pages.  (R. at 22.)

To be sure, Plaintiff presented to Dr. Chandran on March 14, 2018 for

"midline low back pain," and Dr. Chandran recommended physical therapy for

Plaintiff's left shoulder rotator cuff degeneration and cervical spondylosis and

noted:  "I am obtaining MRI [thoracic spine] and referring to [neurosurgeon] for a

second opinion."  (R. at 697, 701.)  However, this record, alone, does not change

the fact that "substantial evidence also supports the conclusion reached by the

ALJ."  *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).  "Our task

is not to reweigh the evidence."  *Mullins v. Sec'y of Health & Human Servs.*, 680

F.2d 472, 472 (6th Cir. 1982).

### ii.   State agency medical consultant Donald H. Kuiper, M.D.'s RFC assessment

In fact, when assigning "some weight" to Dr. Kuiper's August 24, 2016

physical RFC assessment that Plaintiff was exertionally limited to a range of less

than sedentary work (*see* R. at 60-62), the ALJ explained that Plaintiff's testimony

and the primary care notes "support some additional limitations above . . . the

sit/stand option[,]" although "she has had a successful hip operation since this

opinion was rendered."  (R. at 23.)  In sum, the RFC's exertional limitations

provide a limited range of sedentary work (R. at 21), the RFC determination

acknowledged that "[t]he primary notes show ongoing complaints of back pain and

12

reference difficulty with prolonged sitting or standing," and stated that this

difficulty supported "limitation to sedentary work with standing or walking no

more than 2 hours in an 8-hour day, unlimited sitting, and a sit/stand option at least

hourly[,]" (R. at 22), and the opinion evidence review acknowledged that primary

care notes – *i.e.*, those of Dr. McFadden – supported "some additional limitations

above . . . the sit/stand option[,]" (R. at 23).  This illustrates that the ALJ gave

"some weight" to Dr. McFadden's treatment notes in accordance with the

supportability and/or consistency factors.  20 C.F.R. §§ 404.1527(c)(3),(4).

### b.      Treatment by psychiatrist Malini Shenava, M.D.

Plaintiff's mental health records include the September 2015, October 2015

and June 2016 records from Outpatient Behavioral Medicine, the latest of which

reflects that she missed her appointment, because "new insurance could not cover

the visit."  (R. at 320-345.)  More important in this appeal are Plaintiff's January

2016 to March 2018 mental health records from Dr. Shenava / Michele Seleover,

M.A. of Advanced Counseling Service (ACS).  (R. at 427-449, 683-690.)  The ALJ

mentioned these "therapy notes" in her written decision, explaining that they

"repeatedly indicate she is doing 'ok' and reference limitations primarily from her

physical conditions."  (R. at 20; *see also* R. at 22, 23.)

### i.      Dr. Shenava's MSS

Plaintiff claims that the ALJ erred in affording limited weight to her psychiatrist's October 4, 2017 MSS (R. at 582-585), which was completed nearly two years after she began treatment with Dr. Shenava.  (ECF No. 17, PageID.786, 793 n.5.)  In the MSS, Dr. Shenava listed Plaintiff's diagnoses as persistent depressive disorder and generalized anxiety disorder, as well as symptoms of depressed mood, low energy, anxiety, irritability, loss of interest, guilt, low self-confidence, somatic complaints, and decreased concentration.  (R. at 582.)  Dr. Shenava opined that Plaintiff was mildly limited in the "Paragraph B" factors, except that Plaintiff was moderately limited in her "[a]bility to concentrate, persist or maintain pace [CPP][.]"  (*Id.*)  She also opined that Plaintiff was mildly limited in her abilities to "concentrat[e] on the task at hand" and "to engage in the task around others."  (R. at 583.)  She further opined that Plaintiff was likely to be off-task more than 20% and to miss work four or more days per month.  (*Id.*)

When expressly citing the opinion of "claimant's psychiatrist," the ALJ noted that Plaintiff "does not display the type of lack of focus and concentration at regular appointments such that would support these limitations."  (R. at 23.)  This is likely a reference to the ACS records, which the ALJ had already cited at Step 2 and earlier in the RFC determination.  (R. at 20, 22.)[5]  Thus, the ALJ considered

---

[5] In any event, the Court's scan of the administrative transcript reveals that, on June 16, 2015, when Plaintiff presented for poison ivy, Dr. McFadden noted: "Because the itching is very severe[,] and you are feeling very anxious in general

the supportability, consistency and/or specialization factors – 20 C.F.R. §

404.1527(c)(3),(4),(5) – in assigning "only some weight as the opinion of a treating

provider."  (R. at 23.)

> **ii.     State agency consultant Leonard C. Balunas, Ph.D.**

On September 26, 2016, state agency consultant Dr. Balunas opined that

Plaintiff's medically determinable impairments of affective disorder and anxiety

disorder were "non-severe," and further explained that the medical evidence of

record (MER) "indicates persistent depressive [disorder], adjustment [disorder]

with depressed mood[,]" "there are no significant limitations in any domain due to

mental disorder[,]" and "mental impairments are not severe."  (R. at 58.)  The ALJ

found that the non-severity opinion was "supported by the therapy notes, which

indicate she is doing fair to 'ok.'"  (R. at 23.)  The ALJ also noted that Dr. Balunas

"has specialized disability knowledge[.]"  (*Id.*)  Thus, the ALJ considered the

supportability, consistency and/or specialization factors – 20 C.F.R. §

404.1527(c)(3),(4),(5) – in assigning this opinion "significant weight."  (R. at 23.)

---

we have also tak[en] you off work at your request since it is hard to focus."  (R. at
562.)  Also, while Plaintiff's September 1, 2015 mental status exam revealed
limited concentration and attention (R. at 343), and while she appears to have
reported difficulty concentrating on June 16, 2015 (R. at 573) and on July 23, 2015
(R. at 517, 577), her September 16, 2015 mental status exam revealed normal
attention span/concentration (R. at 337).

Plaintiff attacks this assignment of weight by referring to counselor Seleover / Dr. Shenava's January 6, 2016, Adult Clinical Assessment (R. at 439-444), Dr. Shenava's January 20, 2016 Psychiatric Diagnostic Evaluation (R. at 445-448), and CE Dr. Horner's September 1, 2016 GAF score of 56 (R. at 411), all of which *pre-date* Dr. Balunas September 26, 2016 opinion.  (ECF No. 17, PageID.787.) Perhaps Plaintiff's argument that Dr. Balunas "lacked critical evidence . . ." is an attack upon the mental health evidence listed within the disability determination explanation, namely records from September 2015, October 2015, July 2015 and January 2016, which suggests that Dr. Balunas reviewed the January 6th records but not Dr. Shenava's January 20th evaluation or Dr. Horner's September 1st report. (*Id.*, PageID.787; R. at 57.)  Plaintiff points out that "we require some indication that the ALJ at least considered these facts before giving greater weight to an opinion that is not 'based on a review of a complete case record[,]'" *Fisk v. Astrue*, 253 F. App'x 580, 585 (6th Cir. 2007) (quoting SSR 96-6P, 1996 WL 374180, *3 (S.S.A. July 2, 1996)).  *See also Blakley,* 581 F.3d at 409.  (ECF No. 17, PageID.787-788.)  Based on the ALJ's citations to Exhibit 12F, the Court has no reason to doubt that the ALJ considered the January  20th evaluation, and the citations to Exhibit 10F express the ALJ's consideration of Dr. Horner's September 1st CE report.  (*See* R. at 20, 22-23.)

### iii.     Consultative examiner Thomas M. Horner, Ph.D.

On September 1, 2016, consultative examiner (CE) Dr. Horner summarized Plaintiff's diagnoses as "[d]epression and anxiety."  (R. at 411.)  Notably, he organized his MSS in categories similar to the "Paragraph B" factors, in most cases finding Plaintiff either intact or adequate, although he noted that Plaintiff's CPP might be "affected by surges of pain[,]" and that Plaintiff's "ability to withstand or otherwise cope with the stresses of ordinary or customary occupational activity" is "adequate except when stresses mount and do not recede in manageable ways." (R. at 411.)[6]  The ALJ mentioned the September 1, 2016 CE opinion, albeit not by date, at Step 2 (R. at 20) and again within the RFC determination, where the ALJ noted that this opinion "suggested the claimant's mental ability to work is generally intact[,]" (R. at 23).  Also, the ALJ found that this opinion "correlates with the therapy notes . . . and the consultative exam itself."  (R. at 23.)  Thus, the ALJ considered the supportability and/or consistency factors – 20 C.F.R. § 404.1527(c)(3),(4) – in assigning this opinion "significant weight."  (R. at 23.)

        **c.**    **Plaintiff has not shown reversible error in the ALJ's treatment of the physical and mental health opinion evidence.**

---

[6] This observation would appear to be consistent with, for example, her inability to concentrate when experiencing itchiness from poison ivy (R. at 562). (*See* fn. 4, *supra*.)

Plaintiff claims that the record "is replete with medical records [she] amassed for treatment of her chronic conditions[,]" including Dr. McFadden's opinion statement, as to which the ALJ's discounting explanation was "deficient." (ECF No. 21, PageID.831-833.)  Likewise, Plaintiff contends that "there is a voluminous medical record detailing consistent chronic conditions, including that of Plaintiff's mental health . . . [,]" and bases his argument on *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 379 (6th Cir. 2013) (observing that an opinion conflicted "with overwhelming record evidence to the contrary.").  (ECF No. 21, PageID.834.)

Yet, "the Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence, supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones*, 336 F.3d at 477.  As the Commissioner contends, "the ALJ did not attempt to minimize Plaintiff's symptoms or claim that she no longer required treatment for her chronic conditions; in fact, her RFC includes numerous physical limitations (R. 21)."  (ECF No. 19, PageID.814-815.)  As set forth above, the ALJ has provided an "accurate and logical bridge to instruct the Court of her reasoning." *Gross v. Comm'r of Soc. Sec.*, 247 F. Supp. 3d 824, 830 (E.D. Mich. 2017).  Plaintiff having failed to illustrate error in the ALJ's consideration of Dr.

McFadden and Dr. Shenava's opinions, the opinion evidence analysis should be affirmed.

> **2.      Whether the ALJ properly analyzed Plaintiff's subjective statements?**

Plaintiff's second statement of error concerns the ALJ's analysis of subjective statements.  As the regulation provides:  "In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as *consistent* with the objective medical evidence and other evidence."  20 C.F.R. 404.1529(a) (emphasis added); *see also* SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017).

The ALJ began the RFC discussion with a review of Plaintiff's testimony and continued with a review of the medical evidence.  (R. at 21-22.)  Along the way, the ALJ observed that "[t]he evidence establishes the severe impairments above[,]" but "[i]t fails to support limitation to less than a range of sedentary work or a finding that she cannot perform past relevant work."  (R. at 21.)  Importantly, the ALJ made observations as to where the record supported or was consistent with Plaintiff's testimony, such as:

- The primary [Dr. McFadden's] notes show ongoing complaints of back pain and reference difficulty with prolonged sitting or standing, which substantiates the testimony.

- The impaired left arm motion warrants work with only occasional reaching in all directions.  The references to difficulty with prolonged standing/sitting support limitation to

> sedentary work with standing or walking no more than 2 hours
> in an 8-hour day, unlimited sitting, and a sit/stand option at
> least hourly. She testified she cannot lift more than 10 pounds.
> This is reasonable given the cervical imaging and the shoulder
> disorder. She is thus limited to lifting no more than 10 pounds.
> The lumbar conditions as well as the hip and knee issues
> support occasional postural requirements. The joint disease
> warrants work without temperature, wetness, or humidity
> extremes, and the hip replacement and medication use support
> work without hazards or vibrations.

(R. at 22.) However, Plaintiff takes issue with the ALJ's observations regarding

where the record was unsupported or inconsistent with Plaintiff's testimony, such

as:

- The primary care notes at Exhibit 18F contain passing reference
  to fatigue and headaches but no indication that she requires
  frequent rest periods or was referred for specific treatment for
  either. She is treated for overactive bladders [sic], but there is
  no indication it is as limiting as alleged. (Exhibits 13F [R. at
  450-581], 18F [R. at 660-681]). She does not reference as
  frequent restroom use as the testimony suggested. The primary
  care notes indicate her health has improved since she ceased
  working but it also indicates she has improved her self-care.
  She testified she takes her grandchildren to school daily and
  looks after them. She cooks a little and does small household
  chores. (Testimony). These tasks are not inconsistent with the
  limitations above.

- The claimant's testimony is only partially consistent with the
  medical evidence. There is no support for her assertions
  regarding her bladder or fatigue. The record indicates she had
  difficulty with a supervisor prior to ceasing work. She testified
  that she did not cease working due to this issue and that her
  health, particularly her hip, made working difficult. She
  testified her physical health has gotten worse, but the treatment
  notes at Exhibit 18F do not corroborate this statement. The
  claimant's therapy notes also indicate she is doing "ok," and her

> daily activities do not suggest inability for sedentary work as above. (Exhibits 12F [R. at 427-449], 19F [R. at 683-690]). Further, there is no credible medical opinion suggesting she cannot work. The file does not support disability.

(R. at 22.)

Plaintiff claims that her statements about bladder issues, whether in her function report (R. at 196-197) or during the administrative hearing (R. at 38-40), are supported by records from her urologist (R. at 502-511, R. at 378-387).[7] (ECF No. 17, PageID.789.) However, Plaintiff's overactive bladder was found to be "non-severe" at Step 2 (R. at 19), the ALJ's review of Plaintiff's statements acknowledged the overactive bladder listed within Plaintiff's disability report and her testimony about bladder issues (R. at 21, 161, 38-40), and, before stating that "[t]here is no support for her assertions regarding her bladder or fatigue[,]" the ALJ had explained that "[s]he is treated for overactive bladders [sic], but there is no indication it is as limiting as alleged[,]" citing exhibits that encompass the urology records to which Plaintiff refers (R. at 22, 450-581, 660-681).[8] Plaintiff does not show how the ALJ's consideration of the urology records was errant.

_____

[7] There are also Thresa Hargrove, C.N.P.'s May 17, 2017 records, which were reviewed by Joshua Leese, M.D. (R. at 512-516.)

[8] These page ranges represent the exhibits cited by the ALJ – 13F & 18F. (R. at 22.) The urology records to which Plaintiff refers are found within 13F (ECF No. 17, PageID.789; R. at 502-504, 507-510), and the Court suspects that the ALJ's reference to Exhibit 18F was intended to support her immediately preceding

As for why Plaintiff left employment on July 24, 2015, Plaintiff points to her hearing testimony (R. at 36-37) and her disability report (R. at 161-162), not only to establish that she held her job as a manager with the Department of Human Services (DHS) for more than thirty years but also to point out that she left her job due to medical conditions. (ECF No. 17, PageID.789.) Plaintiff claims that "the medical documents corroborate her statements regarding her symptoms[,]" but she does not explain how, nor does she supplement this statement with a record citation. (*Id*.) Moreover, Plaintiff testified that she stopped working due to her physical and mental condition, took a "regular retirement" based on her age and years of service (*i.e.*, could not take a disability retirement), but also admitted that "[a]t that particular time there were some issues with a manager that came into the office[.]" (R. at 36-37.) Also, the Commissioner points to certain records, which support the ALJ's statement that "she had difficulty with a supervisor prior to ceasing work[,]" (R. at 22). (ECF No. 19, PageID.822-823.)[9] Plaintiff later

---

sentence about fatigue and headaches. If not, other incontinence records are contained within Exhibit 7F. (R. at 373-393.)

[9] For example, in what seems to be a June 16, 2015 review of systems, "new supervisor" is listed in the comments for "psych." (R. at 573.) At a September 1, 2015 psychiatric evaluation, Plaintiff reported that her job was one of two causes of her worsening depression (R. at 341) and the assessment stated, *inter alia*, that "[t]he recent relationship with her new supervisor caused her stress in the job, for which she is thinking about to retire from her job[,]" (R. at 343.) Similarly, on September 16, 2015, Plaintiff reported that she "decided to retire from her current job[,]" and "stated that she felt too stressful to work with current supervisor." (R.

pointing out that she "remain[ed] symptomatic" at the July 6, 2017 therapy status review (R. at 683) does not mount a successful challenge to the ALJ's statement that Plaintiff's therapy notes "indicate she is doing 'ok[.]'" (*See* ECF No. 21, PageID.835.)

Finally, Plaintiff addresses the ALJ's treatment of her daily activities. She compares her testimony – that on an average weekday she drives her grandchildren to school (R. at 40) and that she watches her grandchildren if they are at the house, "which they are once in awhile [sic], then I will be watching TV, doing a puzzle[,]" (R. at 42) – with Dr. Horner's notes that "[s]he experiences pleasure in her daily activity when she sees the kids, though there are times when even those visits are preemptive and stressful[,]" and that he "neither observed nor suspected any tendencies to exaggerate or to minimize symptoms[,]" (R. at 410). (R. at 21, 22; ECF No. 17, PageID.790.) However, Dr. Horner was, as the Commissioner puts it, "referring to whether Plaintiff was accurately reporting her symptoms on examination . . . [.]" (ECF No. 19, PageID.823.) More importantly, Plaintiff contends that the ALJ "chose to ignore" Dr. Horner's observation. (ECF NO. 17, PageID.790.) Yet, the ALJ twice cited Dr. Horner's CE report. (R. at 20, 23.)

---

at 336.) Plaintiff's disability representative explains that Plaintiff stopped working in July 2015 but "was paid salary continu[a]nce until late October 2015 and then she received accrued sick and vacation time[.]" (ECF No. 19, PageID.822, n.7.) (*See also* R. at 320.)

Therefore, Plaintiff's observation that the ALJ did not mention Dr. Horner by name is unavailing.  (ECF No. 17, PageID.790).  *See Winter v. Comm'r of Soc. Sec.*, No. 12-11962, 2013 WL 4604782, at *2 (E.D. Mich. Aug. 29, 2013) ("the ALJ's opinion does not leave the impression . . . that by failing to mention Dr. Scaddan's name, the ALJ did not give any consideration to Dr. Scaddan's records.").  Plaintiff's citation to Dr. Horner's comment about preemption and stress does not, in and of itself, warrant overturning the ALJ's subjective statements evaluation (ECF No. 17, PageID.790); the ALJ assigned Dr. Horner's opinion "significant weight," because it "suggested [Plaintiff's] mental ability to work [wa]s *generally* intact[,]" and "correlate[d] with the therapy notes . . . and the consultative exam itself[,]" (R. at 23 (emphasis added), 411).  (*See* Section E.1.b.ii).

Relatedly, Plaintiff claims that her function report and testimony concerning personal care, such as difficulties dressing, bathing, caring for hair, and shaving, due to her shoulders and hip (R. at 39, 197), are corroborated by Creg A. Carpenter, M.D.'s May 10, 2016 records, when she reported that "[s]he has had some progressive difficulty placing shoes and socks[,]" and was diagnosed with various degrees of DJD in her right and left hips (R. at 295-298), and Dr. Chandran's February 22, 2018 records, which reflect that her shoulder condition is exacerbated by "shoulder abduction as well as reaching, and lifting objects[,]" and

assess that Plaintiff's "presentation and imaging are consistent with LEFT shoulder

DJD, and possible cervical spondylosis[,]" (R. at 695-696).  (ECF No. 17,

PageID.790-791.)  To be sure, Plaintiff correctly notes that her "ability to perform

some basic daily functions in spite of pain or medication level does not translate

into the ability to perform substantial gainful activity[,]" *Cowart v. Comm'r of Soc.*

*Sec.*, No. CIV.A. 08-14887, 2010 WL 1257343, at *7 (E.D. Mich. Mar. 30, 2010).

(ECF No. 17, PageID.791-792; ECF No. 21, PageID.835.)  Still, she has not shown

that the ALJ errantly addressed Plaintiff's "daily activities" with respect to her

ability to work.  20 C.F.R. § 404.1529(c)(3)(i).  Here, the ALJ's decision to

discount Plaintiff's subjective allegations must be given deference, as the ALJ was

not required to accept Plaintiff's subjective allegations at face value. *Ritchie v.*

*Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) ("an administrative law

judge's credibility findings are virtually 'unchallengeable.'") (citing *Payne v.*

*Comm'r of Soc. Sec.,* 402 F. App'x 109, 112–113 (6th Cir. 2010)).  In any case, the

shoulder and hip difficulties appear to be acknowledged and addressed in the

RFC's various exertional, postural and manipulative limitations, such as the 10-

pound weight restriction and the restriction to occasional "reaching in all directions

. . . [.]"  (R. at 21-23.)  In sum, it is not clear how the allegedly errant treatment of

her daily activities – whether related to stress or hip or shoulder – would render

Plaintiff unable to perform her past relevant work as a department manager or

welfare manager, jobs which "do[] not require the performance of work-related

activities precluded by" Plaintiff's RFC.  (R. at 23.)

### 3.   Whether the ALJ properly evaluated Plaintiff's depression and related limitations?

#### a.   At Step 2, the ALJ found Plaintiff's major depressive disorder to be "non-severe."

Plaintiff's third statement of error concerns the ALJ's treatment of her

depression and related limitations.  At Step 2, the ALJ considered the "four broad

areas of mental functioning," (*i.e.*, the "paragraph B" criteria), and concluded that

Plaintiff had no limitations in "understanding, remembering, or applying

information," "interacting with others," or "adapting or managing oneself," and

mild limitation in "concentrating, persisting, or maintaining pace." (R. at 20.)  As

to the CPP finding, the ALJ cited Dr. Horner's CE report when stating that

Plaintiff "is able to follow oral instructions and exhibited intact concentration

during the consultative exam[,]" and "exhibited intact abstract reasoning and

judgment."  (R. at 20, 410-412.)  The ALJ also noted that the therapy notes

"repeatedly indicate she is doing 'ok' and reference limitations primarily from her

physical conditions."  (R. at 20, 427-449, 683-690.)  Having found no more than

"mild" limitation in any of these areas, the ALJ deemed Plaintiff's major

depressive disorder "non-severe."  (R. at 20, 20 C.F.R. § 404.1520a(d)(1).)

#### b.   The RFC does not include mental health limitations.

Plaintiff recognizes that, if there is an error at Step 2, it is harmless if it is properly considered when determining the RFC.  (ECF No. 17, PageID.792.)  *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). Thus, her argument is that the ALJ did not "incorporate" any mental health limitations into the RFC, in support of which she states that she received care for her depression from primary care provider Dr. McFadden, psychiatrist Dr. Shenava, and counselor Seleover, and she makes specific references to:

- a September 1, 2015 psychiatric evaluation, which reflected her report of "a long history of depression and [having] been on medication for 5 years[,]" and which diagnosed moderate major depressive disorder (R. at 341, 343);

- the January 6, 2016, Adult Clinical Assessment signed by counselor Seleover and Dr. Shenava, which reflected flat affect, depressed mood, preoccupied thought content, and a principal diagnosis of persistent depressive disorder (R. at 441-442);

- Dr. Shenava's January 20, 2016 psychiatric diagnostic evaluation, which reflects sad affect, depressed mood, and sleep disturbance, as well as disorder of attention and concentration (R. at 446);

- Dr. Horner's September 1, 2016 CE report, which listed diagnoses related to anxiety and depression, scored Global Assessment of Functioning (GAF) as 56, and remarked that her "ability to focus and sustain attention to relevant and customary occupational tasks is similarly intact and operational except as affected by surges of pain[,]" and that her "ability to withstand or otherwise cope with the stresses of ordinary or customary

occupational activity is adequate except when stresses mount and do not recede in manageable ways[,]" (R. at 411);[10] and,

- the October 4, 2017 counselor Seleover / Dr. Shenava mental health MSS, which, *inter alia*, listed Plaintiff's diagnoses as persistent depressive disorder and generalized anxiety disorder, described Plaintiff's symptoms, and assessed several limitations (R. at 582-583).

(ECF No. 17, PageID.792-794).

Preliminarily, to the extent Plaintiff points to the GAF score or relies upon *Kennedy v. Astrue*, 247 F. App'x 761, 766 (6th Cir. 2007) ("The argument of the Commissioner and the finding of the ALJ that the increased GAF score reflects 'improvement in mental functioning' is not supported by substantial evidence.") (ECF No. 21, PageID.836), "the Commissioner has declined to endorse the [Global Assessment Functioning] score for use in the Social Security and [Supplemental Security Income] disability programs, and has indicated that [Global Assessment Functioning] scores have no direct correlation to the severity requirements of the mental disorders listings." *DeBoard v. Comm'r of Soc. Sec.*, 211 Fed. App'x 411, 415 (6th Cir. 2006).

---

[10] Plaintiff inaccurately lists the score as 54 (ECF No. 17, PageID.792-793; ECF No. 21, PageID.836).  In any event, "'A GAF rating of 51 to 60 signals the existence of moderate difficulty in social or occupational functioning.'" *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 276 (6th Cir. 2009) (quoting *Edwards v. Barnhart*, 383 F.Supp.2d 920, 924 n. 1 (E.D.Mich.2005) (Friedman, C.J., *accepting and adopting report and recommendation of* Pepe, M.J.) (citations, brackets, and quotation marks omitted)).

Moreover, Plaintiff argues that Dr. Horner's CE report (R. at 410-412) supports statements within Plaintiff's work history report, namely that "demands on all levels [were] very stressful," (*see* R. at 183-184, 190). (ECF No. 17, PageID.793.) The Court has already addressed the weight assigned to Dr. Horner's CE report (*see* Section E.1.b.iii), as well as Plaintiff's subjective statements as to the reason for leaving her job (*see* Section E.2), and any argument that Dr. Horner's report warrants a non-exertional RFC limitation for Plaintiff's stress and or pain is unavailing. Plaintiff also argues that Dr. Shenava's MSS (R. at 582-583) is consistent with Plaintiff's testimony that she is "always tired[,]" and will "generally lay down[,]" (R. at 40). (*See* ECF No. 17, PageID.793-794.). Yet, the ALJ acknowledged that Plaintiff "reported resting frequently during the day[,]" but later characterized the primary care notes as containing "passing reference to fatigue and headaches but no indication that she requires frequent rest periods or was referred for specific treatment for either." (R. at 21-22.) Thus, even if Dr. Shenava opined in her MSS that Plaintiff had work-preclusive limitations in being off-task and absent (R. at 583), an alleged need to rest frequently was discounted as inconsistent "with the objective medical evidence and other evidence[,]" 20 C.F.R. 404.1529(a), such as the primary care notes (R. at 660-682).

Finally, Plaintiff's argument that Dr. Balunas "lacked medical evidence" (ECF No. 17, PageID.794), is an opinion evidence argument that was addressed

above as to certain pieces of evidence which pre-date the state agency opinion (*see* Section E.1.b.ii).  If Plaintiff intended to argue that the ALJ gave "significant weight" to an opinion that was "not 'based on a review of a complete case record[,]'" *see, e.g., Fisk*, 253 F. App'x at 585, in other words to records that post-date Dr. Balunas's decision, such as Dr. Shenava's October 4, 2017 assessment, any such argument is undeveloped within this statement of error.  (*See* ECF No. 17, PageID.794.)  In any event, the ALJ appropriately discounted Dr. Shenava's MSS based on "regular appointments," *i.e.*, not based the MSS's consistency or inconsistency with Dr. Balunas's opinion.  (*See* Section E.1.b.i, R. at 23.)

### c.    Plaintiff's grid statement is unavailing.

At the time of the administrative hearing and the ALJ's decision, Plaintiff was 58 years old (R. at 34, 132), which makes her an individual of "advanced age" under the regulations.  20 C.F.R. § 404.1563(e).  She has an associate's degree in social work, and her past work – as a department manager and a welfare manager – was skilled.  (R. at 35, 46.)   Plaintiff contends that, if the ALJ had found her depression to be severe, then she would have been found "disabled" under Rule 201.06.[11]  (ECF No. 17, PageID.794.)  That may have been the case if the ALJ had

---

[11] Rule 201.06 provides that a person of advanced age, who is a "[h]igh school graduate or more[,]" but whose education "does not provide for direct entry into skilled work," and whose previous work experience is "[s]killed or semiskilled[,]" but whose "skills [are] not transferable," is "disabled."  20 C.F.R. § Pt. 404, Subpt. P, App. 2.

adopted Dr. Shenava's October 4, 2017 opinion that Plaintiff had moderate limitations in CPP (R. at 582), although it is worth pointing out that Dr. Balunas's September 26, 2016 opinion assessed no more than mild limitations in any of the "paragraph B" criteria, as they were formerly phrased (activities of daily living; maintaining social functioning; maintaining concentration, persistence or pace; and, repeated episodes of decompensation, each of extended duration) (R. at 58). Nonetheless, even if Plaintiff's major depressive disorder should have been found severe, Plaintiff has not shown that it was errantly treated when determining Plaintiff's RFC, such as by illustrating that limitations in CPP required coordinating non-exertional limitations in the RFC. Therefore, the ALJ's omission of mental health limitations from the RFC should be affirmed.

### F.       Conclusion

Plaintiff has neither established a more restrictive RFC than that found by the tribunal – a burden that is hers to meet, *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997), nor shown legal error that would upend the ALJ's decision. For the foregoing reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 17), **GRANT** Defendant's cross-motion for summary judgment (ECF No. 19), and **AFFIRM** the Commissioner of Social Security's decision.

## III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days after being served with a copy, as provided for in Fed. R. Civ. P. 72(b)(2) and E.D. Mich. LR 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after being served with a copy of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated:   September 2, 2020            s/_Anthony P. Patti_
                                      Anthony P. Patti
                                      UNITED STATES MAGISTRATE JUDGE